UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-164-MOC

| | | |
|---|---|---|
| MARIE DEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary

Judgment. (Doc. Nos. 13, 16). Having carefully considered such motions and reviewed the

pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.      **Administrative History**

Plaintiff seeks judicial review of the Social Security Administration's (Agency's)

decision denying her application for disability insurance benefits and a period of disability under

the Social Security Act ("Act").

On January 5, 2017, Plaintiff filed an application for disability insurance benefits and

alleged disability beginning July 21, 2015. (Tr. 23, 178–84). The State agency denied Plaintiff's

application initially and upon reconsideration. (Tr. 61–93). An ALJ held a hearing on March 4,

2019, in response to Plaintiff's written request. (Tr. 23, 42–59). Plaintiff, her attorney, and an

impartial vocational expert (VE) appeared at the hearing. (Tr. 23, 42). On June 6, 2019, the ALJ

decided Plaintiff was not disabled under the Act. (Tr. 23–34).

In the decision, the ALJ specifically noted that Plaintiff had a date last insured of December 31, 2018 and therefore, she "must establish disability or before [this] date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 24). Thus, the relevant period in this case begins on July 21, 2015, Plaintiff's alleged onset date, and ends on December 31, 2018, the date last insured.

The Appeals Council denied Plaintiff's request for review. (Tr. 12–14). Having exhausted her administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.     Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.     Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it

was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained

substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the

decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative

record. The issue is not whether the Court might have reached a different conclusion had it been

presented with the same testimony and evidentiary materials, but whether the decision of the

ALJ is supported by substantial evidence. For the following reasons, the Court finds that the

ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C.

§§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be

under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

-4-

### c. The Administrative Decision

In rendering her decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The ALJ found that through her date last insured, Plaintiff: (1) had not engaged in substantial gainful activity (SGA) (Tr. 26); (2) had the severe impairments of Moyamoya disease[1] and hypertension, as well as the non-severe impairments of depression and anxiety, among others (Tr. 26–28); and (3) did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 28). Before proceeding to step four, the ALJ determined that through the date last insured, Plaintiff had the RFC to:

> perform "light" work as defined in 20 CFR 404.1567(b) except only occasionally climb ladders, ropes, or scaffolds; frequently climb ramps/stairs and balance; and would need to avoid concentrated exposure to unprotected heights and moving machinery.

(Tr. 28). Finally, the ALJ found that through the date last insured, (4) Plaintiff could perform her past relevant work as a billing clerk, medical coder, and medical customer service representative. (Tr. 33–34).

### V.     Discussion

Plaintiff presents the following challenges to the ALJ's decision: (1) the case should be remanded for the ALJ to consider new evidence; (2) the ALJ did not fully account for Plaintiff's

---

[1] "Moyamoya disease is a rare, progressive cerebrovascular disorder caused by blocked arteries at the base of the brain in an area called the basal ganglia." Moyamoya Disease Information page. Moyamoya Disease Information Page, Nat. Inst. of Health, https://www.ninds.nih.gov/Disorders/All-Disorders/Moyamoya-Disease-Information-Page (last visited Feb. 10, 2022).

mild "B" criteria limitations or for her speech "impairment;" and (3) the ALJ did not properly evaluate the opinion evidence.

**A. Plaintiff's Contention that a Neuropsychological Exam from 2019 Warrants Remand under Sentence Six of 42 U.S.C. § 406(g)**

Plaintiff first presents evidence of a neuropsychological examination that she had on November 25, 2019, and asserts that the findings of the evaluation support that she was more limited than the ALJ assessed. (Pl. Br. 10–12, Addendum after Pl. Br. 23). Plaintiff argues that this "new evidence reasonably could lead to the ALJ finding" that she was disabled, and the case should be remanded under Sentence Six of 42 U.S.C. § 406(g). (Pl. Br. at 12). For the following reasons, the Court disagrees.

Sentence Six of 42 U.S.C. § 405(g) provides, in pertinent part:

The court may...at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

Id. A party seeking a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) has the burden of showing that the evidence she wishes to have the agency consider is both "new" and "material" and that she has "good cause" for failing to submit the evidence earlier. Wilkins v. Sec'y of Health & Human Servs., 925 F.2d 769, 774 (4th Cir. 1991); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Plaintiff's argument fails for two critical reasons.

First, to meet the materiality prong of Section 405(g), Plaintiff "must show that the evidence 'might have changed the outcome of the prior proceeding.'" Jones v. Astrue, 647 F.3d 350, 358 (D.C. Cir. 2011) (quoting Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)). That is, "there is a reasonable possibility that the new evidence would have changed the outcome" of the case. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Here, it is not reasonable to believe that Plaintiff's November 2019 neuropsychological examination would have changed the outcome of the ALJ's decision. As discussed, Plaintiff had a date last insured of December 31, 2018, which required her to establish that she was disabled on or before this date, to be entitled to a period of disability and disability insurance benefits. In Johnson v. Barnhart, the Fourth Circuit held that medical evidence post-dating a claimant's date last insured by nine months was "not relevant" to whether substantial evidence supported the ALJ's decision. 434 F.3d 650, 655–56 (4th Cir. 2005). Here, the period between Plaintiff's date last insured and the date of the neuropsychological examination is even longer—11 months. As the ALJ stated, evidence after the date last insured "minimizes [its] relevancy." (Tr. 23). And such evidence does not in itself present a "reasonable possibility" that it would have changed the outcome of the ALJ's decision. See Wilkins, 953 F.2d at 96.

Second, Plaintiff, by her own admission, has not met her burden of showing that there was good cause to excuse her failure to incorporate her November 2019 neuropsychological examination into the record. As Plaintiff concedes, her attorney did not obtain the record and submit it to the Appeals Council for consideration, despite the Appeals Council not denying her request for review until April 2, 2020—approximately five months after the examination. (Pl. Br. 12; Tr. 12). Further, during the hearing, Plaintiff's attorney stated that, apart from some routine follow-up appointments, "the record [is] complete." (Tr. 23, 43). Thus, Plaintiff fails to show there was good cause excusing her failure to incorporate the examination into the record.

In sum, Plaintiff fails to meet the threshold for a remand under Sentence Six by showing that the evidence is material, nor has she established good cause for not previously submitting the evidence for consideration. Accordingly, this first assignment of error is overruled.

**B. Plaintiff's contention that the ALJ improperly considered Plaintiff's work-related mental impairments and a speech impairment in assessing her RFC.**

Next, Plaintiff argues that the ALJ did not properly consider her work-related mental functions or a "speech impairment" in assessing the RFC. (Pl. Br. 12–17). Contrary to Plaintiff's argument, the ALJ assessed Plaintiff's mental functioning and determined Plaintiff's mental impairments of depression and anxiety caused no more than minimal limitations in her ability to perform work activity. (Pl. Br. 16; Tr. 26–27). See 20 C.F.R. §§ 404.1520a, 416.920a. Moreover, the ALJ provided a detailed analysis of Plaintiff's mental impairments to allow this Court to conduct a meaningful review. Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019); Woods v. Berryhill, 888 F.3d 686, 693 (4th Cir. 2018). Additionally, as discussed below, Plaintiff fails to meet her burden of showing her speech problems were a medically determinable impairment.

**1. The ALJ thoroughly explained how the evidence supported her finding that Plaintiff's mental impairments cause no more than mild limitations.**

The ALJ explained that Plaintiff received treatment for her depression and anxiety from her primary care provider, David Meyer, M.D., and reported experiencing improvement in her symptoms with treatment. (Tr. 26, 1236, 1238, 1281, 1313). Dr. Meyer described Plaintiff's depression as stable in 2016 and she consistently had normal mental status examinations showing that she was cooperative, displayed normal judgment, and presented with appropriate mood and affect. (Tr. 26, 1238, 1269, 1283, 1314, 1424, 1565, 1692, 1754, 1862, 1896, 2606). And, despite Plaintiff's report that her impairments affected her concentration and memory, the ALJ noted that she also admitted that she had no problems paying attention, she finishes what she starts, she reads, and she does not need reminders to handle her personal care, take her medication, or go places. (Tr. 27, 236–39). The ALJ also acknowledged Plaintiff's reports that

-8-

she did not handle stress well and did not like being in large gatherings. (Tr. 27, 239–40). However, as Plaintiff admitted, she could handle changes in routine, she socialized in small groups, got along well with others, and was even able to perform volunteer work at the school library twice per week for four to six hours. (Tr. 27, 233, 238–40).

Additionally, in assessing Plaintiff's RFC, the ALJ considered the prior administrative medical findings of the State agency psychological consultants, who "are highly qualified medical sources that are also experts in the evaluation of medical issues in disability claims under the Act." (Tr. 27). SSR 17-2p, 2017 WL 3928306 (March 27, 2017). In this case, two State agency psychological consultants reviewed the evidence through April 2017 and August 2017 and determined Plaintiff had no more than mild limitations in the mental areas of functioning and was not disabled. (Tr. 68, 84–85). The ALJ explained that she found these opinions were entitled to great weight because Plaintiff's "mostly normal mental status exam findings" supported their opinions and the opinions were consistent. (Tr. 27).

Relying on Mascio v. Colvin, Plaintiff asserts that the ALJ must articulate her mild mental imitations in the RFC or "explain why no such limitations were necessary." (Pl. Br. 15-17). 780 F.3d 632, 635–38 (4th Cir. 2015). But the ALJ did explain why no such limitations were necessary. While there are differing views on the application of Mascio, where mild difficulties are involved, the Court agreed that mild difficulties do not necessarily translate to work-related functional limitations. Id. at 638. Significantly, in Thorp v. Berryhill, this Court held that Mascio does not require all restrictions, including mild restrictions, to be discussed in functional terms; thus, the ALJ's assessment here does not contravene Mascio. No. 3:16-CV-00070-RJC, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (collecting cases). Further, as this Court explained, Plaintiff's argument, that when an ALJ determines that a claimant has mild limitations in an area

of mental functioning it "must be accounted for in the RFC or their absence must be explained," fails when the ALJ sufficiently explained the absence, as she did here. Straite v. Berryhill, No. 315-CV-00006-FDW, 2017 WL 4052170, at *4 (W.D.N.C. Sept. 13, 2017). Moreover, in Mascio, the court found that because a "moderate" finding has a presumption of some "significant" limits to basic work activities, the ALJ must discuss what, if any, limits should be incorporated into the RFC. 780 F.3d at 638. As Plaintiff admits, the courts have "'extended the holding in Mascio to require an ALJ either include restrictions in the RFC arising out of those moderate limitations . . . or justify the omission of such restrictions.'" (Pl. Br. 13–14). Here, the facts are distinguishable from Mascio because the ALJ never found that Plaintiff had moderate limitations in the four areas of mental functioning. Moreover, the Mascio court never stated that a "mild" limitation would carry that same presumption. See Gilbert v. Berryhill, No. 5:16-cv-100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017); Roberson v. Colvin, No. 3:15-cv-570-MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016). In fact, the Fourth Circuit stated in Mascio that where "the ALJ may find that the concentration, persistence, or pace limitation does not affect [a plaintiff's] ability to work . . . it [is] appropriate to exclude it from the hypothetical." 780 F.3d at 638.

"As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio per se." See Gilbert, 2017 WL 1196452, at *3; Roberson, 2016 WL 5844148, at *6. However, to help clarify, while Mascio does not compel the RFC discussion Plaintiff demands, it does impose a duty to explain why mild mental health impairments found at step two do not translate into work-related limitations. Reinhardt v. Colvin, No. 3:14-cv-488-MOC, 2015 WL 1756480, at *3–4 (W.D.N.C. Apr. 17, 2015). Consistent with this finding, the ALJ articulated, "the record supports a finding that [the mental impairments] do not cause more

than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (Tr. 26). Importantly, while Plaintiff disagrees with the ALJ's finding, she does not identify specific functions related to her ability to work that the ALJ did not address. Cf. Dowling v. Comm'r, 986 F. 3d 377 (4th Cir. 2021). The ALJ's decision shows that she sufficiently applied the law in her analysis of the evidence and Plaintiff's mental impairments. Thus, this assignment of error is overruled.

**2. Plaintiff failed to show that her speech problems were a medically determinable impairment.**

Next, in a single sentence, Plaintiff asserts that she "has been noted by multiple treating providers and an SSA employee to have a speech impairment and no limitation for this impairment was included in the RFC." (Pl. Br. 15). First, the ALJ did not find that Plaintiff had the medically determinable impairment of a speech impairment. (Tr. 26). Plaintiff has the burden of proving disability and producing evidence of it. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). At step two, it is Plaintiff's burden to show "that [s]he has a medically severe impairment." Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If, as Plaintiff speculates, she had a speech impairment that precluded her ability to perform a reduced range of light work, it was Plaintiff's burden to show why she was disabled due to this impairment. Id. Plaintiff failed to meet that burden. Furthermore, and in any event, Plaintiff has waived this argument by failing to develop it. Haperin v. Saul, No. 19-2383, 2021 WL 1259502, at *5 n.8 (4th Cir. Apr. 6, 2021) (A party "waives an argument by… failing to develop its argument—even if its brief takes a passing shot at the issue.") (internal citations omitted); Duckworth v. Berryhill, 2017 WL 1528757, at *5 (W.D.N.C. Apr. 26, 2017) (noting that "[i]t is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived'"). For these reasons, Plaintiff's contention regarding her alleged speech impairment is without merit.

### C. Plaintiff's Contention that the ALJ failed to adequately explain how she considered the medical opinions of Plaintiff's treating sources

In assessing Plaintiff's RFC, in addition to considering the prior administrative medical findings of the State agency consultants, the ALJ considered the opinions of Plaintiff's treating sources. (Tr. 32–33). Plaintiff challenges the ALJ's assessment of these opinions. Specifically, she contends that ALJ erred in finding the opinions of Vinay Deshmukh, M.D., Nabil Ahmad, M.D., and Dr. Meyer were entitled to little weight. (Pl. Br. 19–22).

Plaintiff states that Drs. Deshmukh, Ahmad, and Meyer "were all unanimous that she is disabled and cannot work" and the ALJ should have given these opinions controlling weight. (Pl. Br. 19–20). As support, Plaintiff cites Dr. Deshmukh's September 2017 statement that "[p]atient is unable to work due to her uncontrolled hypertension and her Moya Moya Disease." (Pl. Br. 19 n. 105; Tr. 1790). She also cites Dr. Ahmad's statement that she was likely to be "off task" 25% or more of the workday with full-time work, and Dr. Meyer statement that she was likely to be "off task 20% of the workday. (Pl. Br. 19 n. 105; Tr. 1795, 1799). Both Drs. Ahmad and Meyer stated that Plaintiff was likely to be absent from work more than four days per month due to her impairments. (Tr. 1795, 1799).

The ALJ considered the regulatory factors for evaluating these opinions and cited supporting evidence, to refute Plaintiff's arguments. (Tr. 32–33). See 20 C.F.R. § 404.1527(c).[2]

---

[2] The ALJ is not required to list each of the regulatory factors for opinion evaluation in the decision. Davis v. Astrue, No. 7:10-CV-00231-D, 2012 WL 555782, at *8 (E.D.N.C. Jan. 5, 2012), report and recommendation adopted, No. 7:10-CV-231-D, 2012 WL 555304 (E.D.N.C. Feb. 17, 2012) (citing Vereen v. Astrue, No. 5:10–cv–569–FL, 2011 WL 6780788, at *3 (E.D.N.C. Dec. 27, 2011)). The ALJ is also not required to repeat her analysis with respect to

As the ALJ observed, these statements are "on an issue reserved to the Commissioner." (Tr. 32). Statements such as the ones made by Plaintiff's treating physicians "are not medical findings" and, instead, "are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled" and "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(1), (3). Therefore, the ALJ appropriately determined that such opinions were not entitled to "any special significance." (Tr. 32).

Citing Dowling, Plaintiff asserts that because the ALJ did not give the opinions Drs. Deshmukh, Ahmad, and Meyer controlling weight, she was "required to apply the six-factor analysis to determine the[ir] weight" and she failed to do so. (Pl. Br. 20). 986 F.3d at 384. But, contrary to Plaintiff's assertion, the ALJ considered the appropriate regulatory factors. Dr. Ahmad found that Plaintiff could sit for more than two hours at one time and up to four hours in an eight-hour workday, stand for two hours at one time and stand/walk for up to 2 hours in an eight-hour workday, occasionally lift and carry less than 10 pounds, never perform postural activities, and would need extra breaks due to chronic fatigue, pain/paresthesia, and numbness. (Tr. 1793–94). Similarly, Dr. Meyer determined that Plaintiff could perform less than sedentary work and would require extra breaks because of muscle weakness, pain, and chronic fatigue. (Tr. 33, 1797).

In contrast to Plaintiff's arguments, the ALJ considered the examining and treatment relationships of these physicians, noting that Dr. Ahmad was a neurologist (Tr. 31), and Dr.

---

every finding and sub-finding in the decision. See McCartney v. Apfel, 28 Fed. App'x 277, 279 (4th Cir. 2002) ("[T]he ALJ need only review medical evidence once in his decision.").

-13-

Meyer was her primary care provider (Tr. 26); and she addressed the consistency and supportability of their opinions. (Tr. 33). 20 C.F.R. § 404.1527(c)(1)-(5). The ALJ further explained that the totality of the evidence, including Dr. Ahamad's own treatment notes, contradicted his opinion. See Clark v. Colvin, No. 5:13-cv-157, 2014 WL 7005366, at *4 (W.D.N.C. Dec. 11, 2014) (ALJ properly discounted an opinion in part because the physician's own notes did not support it). For example, while Dr. Ahmad assessed that Plaintiff would be off task for a significant amount of time, the evidence shows that she was generally stable from a neurological standpoint and consistently exhibited normal attention and concentration. (Tr. 33, 1795, 1852). Contrary to Plaintiff's statement that "the ALJ did not identify any other evidence, treatment, testing she believed are inconsistent with the physician's opinion," the ALJ discussed that Dr. Ahmad's statement that Plaintiff required extra breaks because of chronic fatigue, pain/paresthesia, and numbness was inconsistent with her treatment history, which illustrated that her neurological examinations were generally unremarkable. (Pl. Br. 21; Tr. 33, 1793, 1852).

Similarly, the ALJ noted that despite Dr. Meyer's assessment that Plaintiff required extra breaks because of muscle weakness, the evidence showed that she consistently exhibited 5/5 strength and had normal neurological and musculoskeletal findings. (Tr. 33, 1347, 1360, 1517, 1797). As the Fourth Circuit articulated in Dowling, "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." Dowling, 986 F.3d at 385. While there may not have been a factor-by-factor analysis in this case, the ALJ's narrative shows that the regulatory factors were adequately considered.

Here, the ALJ "neither merely gave summary conclusions devoid of analysis, nor simply cited to evidence she deemed was consistent." Childress v. Berryhill, No. 3:18-CV-00062-FDW, 2018 WL 5045220, at *7 (W.D.N.C. Oct. 17, 2018) (distinguishing Wood v. Berryhill, 888 F.3d 686, 692, 694 (4th Cir. 2018)). The ALJ's discussion of the evidence sufficiently explains how she arrived at the functional limitations articulated in the RFC. The ALJ thoroughly discussed the medical records relevant to Plaintiff's impairments and alleged limitations, noting her course of treatment, treatment modalities, physical examination results, diagnostic test results, and medical opinions. As the Fourth Circuit explained in Mascio, "[r]emand may be appropriate …when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636. Here, the ALJ assessed all relevant evidence regarding Plaintiff's impairments and her related symptoms as discussed in this memorandum to refute Plaintiff's claims. Id.

Moreover, "Plaintiff has failed to point to any evidence not addressed by the ALJ that would arguably support a functional limitation not included in the [] RFC finding." Amavisca v. Berryhill, No. 5:18-CV-26, 2018 WL 5722663, at *8 (W.D.N.C. Nov. 1, 2018). Overall, the ALJ applied the appropriate law and supported specific findings of fact with substantial evidence when evaluating Plaintiff's symptoms to formulate the RFC. Importantly, the relevant inquiry here is not whether substantial evidence supports Plaintiff's desired findings, but instead whether substantial evidence supports the ALJ's findings. Indeed, an ALJ's decision will be upheld even if an alternative position is also supported by substantial evidence. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the [ALJ].") (citing <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)). The ALJ did not find that Plaintiff was without limitation; rather, the ALJ found that her impairments were not disabling through her date last insured. Thus, this final assignment of error is overruled.

## VI.    Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson</u>, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 13) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 16) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: March 17, 2022



Max O. Cogburn Jr.
United States District Judge

-16-